United Natural Foods v. NLRB, and I'm guessing that you're all familiar with our lighting system and you don't need me to inform you about that, yes. Okay. We'll hear first from Mr. Misamara? Miskamera. Miskamera. And thank you for being here. Thank you for having me. We hope everybody in your family is healthy. Everyone, my wife has turned the corner, thank you, and I continue to be healthy. Oh, fortune. And is there any objection if I remove my mask while I'm addressing the court? No. And Judge Higginbotham, I'm happy to leave my mask on if that would be your preference. I'm sorry? Do you want him to keep his mask on? It's up to you. As long as you keep your voice up, that's not a concern. It's not a concern. You can take it off if that is easier for you to speak. You don't need to wear the mask from my case. It's up to you. Thank you very much. May it please the Court. Your Honors, this case involves two questions, both of which fundamentally affect the stability and the functioning of the National Labor Relations Board. And as you know, the NLRB is a five-member board responsible for adjudicating alleged violations of the National Labor Relations Act. The only place that parties can go to get these violations adjudicated and remedied is the National Labor Relations Board. Every NLRB case has a winner and a loser. Alleged violations take many years for the merits to be decided. And we're here in June 2022, and the dispute giving rise to this case arose more than three years ago. When you say two issues, are you accepting that Excella forecloses the removal issue? Well, no. In fact, Your Honors, with respect to the second issue that I'm going to address, I'll note that this Court had a similar situation some time ago, similar to the Excella case. Although the Fifth Circuit's rule of orderliness prevents one panel from deciding. Okay. I'll let you move on with your primary argument. You didn't file a 20-A-J in response to their assertion that Excella, so your argument is that the Excella panel violated our rule of orderliness? No. My point is, in some prior decisions, Your Honors, for example, the Convergys decision, which was a class action waiver case, I'll point out that Judge Higginbotham and also Judge Higginson, you both, in the Convergys case, dealt with an issue that had been addressed previously by many, many earlier Fifth Circuit panels, which had rejected the NLRB's position on class action waivers. And notwithstanding that, in Convergys, Judge Higginbotham, you authored an extensive dissenting opinion regarding the earlier Fifth Circuit decisions, and Judge Higginson, you wrote a concurrence agreeing with Judge Higginbotham's dissent, although you concurred because of the rule of orderliness. And with respect to the President's power, and we believe his lack of power to remove the General Counsel, we also think that this panel's assessment of that issue in a meaningful way will greatly benefit the Court and have great value for reasons that I will address a little bit later in my argument. Great. Okay. Thank you. So the last preliminary point that I'll make is the National Labor Relations Board and the National Labor Relations Act has been described by the Supreme Court in the first national maintenance case as having the purpose to foster in a neutral manner a system in which conflict between the competing interests of employers, unions, and employees can be resolved. And so the relevant events in this case are addressed in our briefs, and I'll just point out that the original dispute arose in February of 2019, giving rise to a charge filed by UNFI with the National Labor Relations Board and an NLRB complaint issued in July 2020. The complaint was issued by a regional director acting on behalf of NLRB General Counsel Peter Robb. UNFI, on February 1, 2021, filed a motion for summary judgment placing the merits of the entire case before the National Labor Relations Board. While that motion was under consideration by the Board, the same regional director who had previously issued the complaint issued a subsequent order on February 24, 2021, which purported to withdraw the complaint at the direction of a new acting General Counsel Peter Orr. And the acting General Counsel was appointed after President Biden on January 20, 2021, which was the President's first day in office, removed the preexisting General Counsel Peter Robb. So when General Counsel Robb was removed, at that time his four-year term as General Counsel, which was prescribed in Section 3D of the National Labor Relations Act, still had roughly 10 months to run. Consistent with the Board's rules, UNFI filed an appeal of the regional director's order. I'm just going to interrupt because time is running. I think we're quite familiar with the procedural history. If you could get to your analysis and tell me, are you making your first point as the improper removal point, or are we getting to the— And with respect to the adjudication point, Judge Higginson, and the other judges, I'll just note everyone agrees this issue is controlled by the UFCW Local 23 case. That case establishes two basic things that we think are indisputable. One is at some point in every case that's pending with the NLRB, the adjudication process begins, and the commencement of the adjudication process cuts off the General Counsel's unilateral discretion to withdraw the complaint. We think this case involves an easy question and an easy answer. The easy question is whether adjudicating a summary judgment motion constitutes an adjudication of the case. We think the easy answer is yes. Let's say that were an answer, even an easy answer. Isn't the real question before us, though, whether or not we would accord Chevron deference to whether the Board's different rule of law is a reasonable construction of the NLRA? Well, you know, in the UFCW case, number one, Your Honor, we think the events in this case, and you'll note in our briefing, we preserve our position that Chevron deference is simply no longer appropriate with respect to the NLRB. However— Okay. I'm going to stop you on that. You preserved it in a footnote. Correct. Do you think that preserves it? You didn't cite any cases. You cited a C generally to multiple law review articles. What's your best case for that proposition? Your Honor, I don't have a specific case that I would cite for that proposition, except I would say that the events of this case, especially if the NLRB is going to become an agency that engages in wholesale reversals with respect to substantive positions and procedural issues, we think that undercuts the case for Chevron deference. Meaning the cases you say where they've shown inconsistency or even reversal. Which of the three you cited do you think is the most on point? Your Honor, I don't think any of those cases are directly on point with what we've seen here. No, but which stands for a reversal of what's here? UPMC or what was the state? Well, in fact, all three of the cases that are cited in our brief on this particular issue establish the basic proposition that once adjudication has commenced. And often adjudication commences when evidence, a hearing opens and evidence, the first piece of evidence is simply introduced to an administrative law judge. And that was the case in UPMC. The hearing had started. In Independence State, it makes the same point. And the Robinson case makes the same point. So I'm just pressing you because it will help me to see your strongest answer. Here, of course, it's over a month before. And without the notice to show cause or the transfer, the hearing is still scheduled. But, Your Honor, we think to focus on whether the hearing was scheduled versus focusing on what was occurring in relation to the disposition of summary judgment is to put the wrong thing first. Whether or not a trial occurs, either in federal civil litigation or before the NLRB, whether there's a hearing, which is the equivalent of a trial, it depends on whether a motion for summary judgment has merit. If the motion is found to have merit, that constitutes an adjudication. Without regard to whether the trial or hearing was canceled or postponed up front or whether it remained pending, that procedural issue doesn't relate to the matter that is material in what was the holding of the UFCW case, which is adjudication of the merits. The commencement of adjudicating the merits is what cuts off the general counsel's unlimited discretion to withdraw the complaint. And I'll point out that in this case, it's even clearer that the filing of the motion for summary judgment constituted the commencement of board adjudication because UNFI and the unions were parties to a parallel federal district court case involving the same parties arising from the same dispute involving exactly the same alleged violations of the National Labor Relations Act. And in that case, the parties jointly agreed that the liability issues, the alleged violations of the National Labor Relations Act, were appropriate for resolution by way of summary judgment. But the unions as interveners have said that cases aren't identical, correct? Well, I mean they involve – they arise from the same dispute, the reorganization. But how would a union, a status statement about the case being ripe, make unreasonable the board's determination that prosecutorial discretion exists until this bright-line rule the Supreme Court described? Well, the bright-line rule, what you're referring to as the bright-line rule in the UFCW case arose in the context – and it was described by the Supreme Court as a narrow issue. It arose in the context of a post-complaint pre-hearing settlement agreement. The question was whether withdrawing the complaint in that circumstance was permissible in the exercise of discretion by the general counsel. In that case, there was no question about summary judgment, and the NLRB rule in the principle governing the commencement of the hearing makes complete sense. But the standard that the Supreme Court identified in UFCW was whether or not adjudication commences. And the Supreme Court in the UFCW case specifically said there's a spectrum of different types of actions that may occur in many of those issues. The distinction between when the prosecutorial discretion ends and is superseded by the adjudicatory process will be clear. In other cases, it won't be so clear. This is a case specific to summary judgment where we believe the demarcation line is very clear. Adjudicating the merits of a case which, if meritorious, means no hearing will ever occur in connection with a meritorious summary judgment motion. In that case, it makes no sense for the standard to be whether a hearing has commenced. Because, again, if the summary judgment motion is found to have merit – and this is the other piece.  So your rule is essentially pull into the NLRA context the civil rule 41. Yes, and in fact – But didn't the Supreme Court in the case that we've been discussing say courts shouldn't create categories to put agency action in? The relevant question again is, is the agency's placement reasonable? And why is it unreasonable for them to say we're going to have a bright line rule and it would move into adjudication once the board notices the show cause and transfers the case to itself? Well, the short answer to that, Dr. Dickinson, is the board here is still stuck with the obligation to comply with its own rules. Its own rules require a motion for summary judgment to skip the administrative law judge, to not be filed with a regional director, and to go directly to the board. And the rules say upon receipt of the motion, the board has one of two options. It can either determine that the motion lacks merit or the board can issue a notice to show cause why the motion cannot be granted. That requires an assessment of the merits, which under the board's own rules indicates must commence upon receipt of the motion. So we're not telling the board what to do. We're just suggesting here that the board is obligated under the UFCW case with complying with its own rules. Counsel, could the general counsel change his or her mind, a future general counsel, and refile the complaint? Your Honor, whether or not the general counsel, if the complaint is withdrawn and then reinstituted, it's possible in some cases that a complaint could be reinstituted. Then how can the dismissal be an adjudication? Well, our position is that the evaluation of the merits associated with summary judgment is an adjudication. But it's no different than not having brought the complaint in the first place, right? If the general counsel decides not to, or the regional director acting on behalf of the general counsel, decides not to institute the complaint in the first place, are you in exactly the same position as you are today? Well, to the contrary, I would actually flip that, Judge Oldham, and suggest if you try a case to its conclusion and one of the party loses, that's tantamount to a dismissal, but the case has been adjudicated. But in that circumstance, to use your hypothetical, then obviously I'm assuming the complaint couldn't be reinstituted. The case can't be re-adjudicated after it's been adjudicated the first time, right? I mean, there's some sense of res judicata in front of the Board, I would assume. Well, Your Honor, I think that would depend on the specific facts and circumstances. Those principles do work in certain contexts with the Board. But I can understand how a party who litigates to the conclusion in front of the Board and loses is in a different position than the party who never has the complaint brought in the first place. But as to between a complaint never having been brought in the first place and your client, I'm having a hard time seeing the distinction. Obviously, a complaint never having been brought in the first place, that's not an adjudication, we'd all agree. And here, you're basically in exactly the same spot as if nothing had ever happened, unless I'm misunderstanding. Yeah, I mean, it's hard to separate the outcome of the case to disentangle whether that results from an adjudication, usually it does, or whether it puts the parties in the same position they would have been as if a complaint had not issued. In this case, we think the only bright-line standard that can really be applied is that adjudicating the merits of a summary judgment motion involves adjudicating the merits of the case. And I see my time is up, Your Honor. With respect to Argument No. 2, which we have briefed, we would hope that this panel would also give meaningful consideration to that issue. Thank you, Counsel. Ms. Beard? Good morning. I'm Heather Beard for the NLRB. As a threshold matter, UNFI's petition for review is not properly before this Court, and its special appeal of the complaint withdrawal was not properly before the Board. And so I am going to address initially the threshold matter of jurisdiction on the motions to dismiss, as well as the responses to that, as well as in the briefs. We believe that we've demonstrated that UNFI has failed to establish that the order of the Board denying the special appeal was in the first place a final order of the Board for purposes of Section 10F of the NLRA. It was a final order, subject to review? We are saying that we, the Board, believe it was not a final order of the Board. That would create a split with your position in Boilermakers to the Ninth Circuit, wouldn't it? You urged the Ninth Circuit to reach the merits in Boilermakers. The Boilermakers, my review of what happened in Boilermakers is that the Board did not believe in the briefing that the Court had jurisdiction over the determination that was made in Boilermakers. And that's because the Board looked at what the order did, when you do to see if it complies with Section 10F in finality. And what the order in Boilermakers did was actually do what happened here, which is it said, look, the general counsel in this case did not have the authority to withdraw the complaint. And that's not something that the Board gets into in any sort of way, which means it's not an adjudication, and for purposes of 10F finality. Right. But that's the merits issue that they reached at your recommendation, I thought. Well, my read of Boilermakers, right, my read of Boilermakers, let's take a step back. Should that have been the case? And again, that's not my read of Boilermakers. It's that the Court itself was ascertaining whether it believed it had jurisdiction to even decide the matter. And the Board's view in that case, I believe, was you don't have the ability to do that. But if we get past that threshold issue, then absolutely on the merits of the adjudication, Boilermakers is a really good case for the Board in this case in terms of what is— Do you want to get to the merits, or do you want to keep pressing more arguments? Sure. I'd love to get to the merits here. Okay. But before we get to the merits of the adjudication versus the prosecution, I'd just like to say the Board's position is that Excella, the panel decision of this Court in Excella, controls this case. And that's the Board's position with regard to Excella. And again, even though, as we said in the briefs, you don't—with a couple of levels, we don't even think this Court needs to reach the issue of whether the general counsel is valid or removed, though this Court has found that he was. Let's get right to the adjudication, or the lack of an adjudication in this case. Okay. Here, what the Board did is what you were discussing, Judge Higginson, we think is exactly correct. The Board's rules and regulations in this case are entitled to Chevron deference. The Board read its rule on transfer. The Board read its rule on the R.D.'s withdrawal of the complaint. And the Board said here, according—and under U.F.C.W., which is pretty much black-letter law, we, the Board, do not have the authority to jump in and look at something that is a purely prosecutorial discretionary decision by the general counsel. Why am I wrong to not think that if we look at either the civil or criminal analog, usually once litigation and filings have occurred, that's in the world of adjudication, right? So you would lose under Rule 41, or you wouldn't. And then the criminal analog, which I'm more familiar with, is Rule 48. And once the government initiates a prosecution, you need leave of court to dismiss it. So why aren't those rules more applicable also to the NLRA context? Sure, because the NLRA has its own rules that it's adopted. And the NLRA has adopted its own rules that do something different with summary judgment than is done in the civil. And I'm familiar with civil because that's how this was briefed. But do something different, which would indicate that simply because a party who has come to the National Labor Relations Board, in this case a charging party, private party, has come and said, here at the Board, we want to put this in front of you as far as summary judgment, that that's different than the civil rules. Number one, the civil rules require — have some requirements that the Board doesn't have in terms of affidavits and such for purposes of civil summary. Counsel, I would suggest to you that leave of court in the criminal proceeding does not accord very much discretion to the United States District Court. This court is so held in a situation in which the government decided to not go forward with a prosecution and a plea deal. And the district court said, I will grant leave of court. And that case came to this court. I'm familiar with it because I argued it on special counsel. And I lost. And those stick in your memory. I understand. I understand what you're saying. Well, that's up to the criminal side where we're vindicating separation of powers principles in a powerful way. I'm not going to re-argue my case. I lost. But here in the administrative side, this is not that hostile argument to the contrary. I'm just saying in an administrative context, then there's much more play. We're not talking about large separation of powers concerns here. Sure. And what I would say is that there could be a sensible read of the Board's rules and regulations, again, specific to the Board and how the Board operates when you have the split between the general counsel and the labor board for adjudicating things. And it could be sensible that we'd have a different rule as to when a case becomes adjudicatory. But we would say that this is a clear case here of the Board getting deference to looking at its own rules, that transfer's reasonable. And I want to tell you why when transfer happens it's important. When transfer happens it's important because the options in front of the Board are to do two things, neither of which results in a final order. The first thing that can happen is, as my opposing counsel said, there can be a denial of the motion for summary judgment. But that is not adjudicating the merits. That just means you go have the hearing. And, in fact, the rule says that in normal circumstances the hearing is going to continue unless there's a notice to show cause issued, which is triggered by the motion to transfer to the Board. And if that happens, a notice to show— Notice always triggers transfer? The transfer, right. The Board is not going to have to move the proceeding from the realm of the machinery where the general counsel has the discretion and is going to bring it in front of the ALJ and there's going to be evidence introduced. And then there is some point where there's a line, there's a spectrum between nothing's happened over here and the complaint has— So it would be unreasonable for the Board to construe adjudication to only begin at the hearing. Your position is this modified— Sure. The Board has actually said in the American Elgin case that even after the hearing opens, there's a point at which there hasn't been evidence introduced yet where the Board has drawn the line and said that is still a prosecutorial act. That's the American Elgin case where there was a settlement of the case after the hearing had opened, after the hearing had opened, but there had not been evidence introduced. And so this line that the Supreme Court talks about in UFCW about where is prosecution and where is adjudication, we think that the agency made a reasonable determination of that under Chevron and— I'm asking you when would it be unreasonable. Oh, okay. Is your position saying that even if they had noticed it for show cause and the case had been transferred to them, it would still be within the general counsel's authority to withdraw the complaint? Yes or no? Well, what the Board said in this case actually in UNFI in the footnote is it's not ruling as to what would have happened had it been transferred. But this case for sure, it is relying on the fact that there had not been that all-important transfer, which does seem a lot more adjudicatory than what happened here in this case. What about an unclean hands problem? I mean, I can understand unilateral discretion to initiate, commence a prosecution or file charges, but there is some public concern about can they go up to the day before the hearing and then withdraw it unilaterally? Sure. You know, bribery or anything else that would somehow make the case disappear. How do we protect against that? Okay. Well, Congress in the Supreme Court essentially said in UFCW that the general counsel's decision to bring or not to bring a complaint is something that is . . . To bring or not to bring. But once they've brought it and then, presto, it disappears. Right. Is there any legitimate court inquiry? That's the question I would answer. I would answer that by saying it's not an inquiry under 10F of the Board's final order that we're, any final order that we're looking at here. It's not this case. It's not here. And they haven't raised anything other than check this out under 10F as a final order. So I'm happy to address any other questions if the Court has them, but I feel that our brief establishes pretty clearly that not only as a threshold matter does this Court not have jurisdiction over this as a final order under 10F, but that should the Court go beyond that. This is a case where the Board reasonably construed its own regulations and the statute relying on UFCW that this is not a case where the prosecutorial discretion of the general counsel was something that the Board had authority to look at. And so we urge that you deny the petition for review. Well, I'm not going to make you stand there for 10 minutes, but I usually have more questions. I only have one. Sure. You recall in a footnote opposing counsel said that the Board's position has been inconsistent, citing three cases. Do you want to speak to those three cases? Absolutely. First of all, no, we do not believe the Board's position has been inconsistent in any of those cases. And as we said in our brief, in UPMC, well, let's start with Independence Day. In Independence Day, there had been a transfer, so there's nothing inconsistent with this decision in Independence Day. Secondly, with the UPMC decision, there had been days and days and days of hearing before there was any sort of approval of a settlement by the Board in that case. So again, there's nothing inconsistent with how the Board is handling the case here. And then finally, the Robinson Freight, I believe the case name, it's an odd case where the case had gone all the way through. I think there had been a hearing, there had actually been a decision of the judge, and then there had been an allegation that earlier, way back in the day, if you went all the way back, there had been some sort of a settlement that had not been honored by the regional director. And we don't think that that case in those circumstances has any sort of bearing on the Board's construction of Section 3D and its determination when the General Counsel has lost, loses control over the case to adjudication. That's an oddity, that case. And it didn't involve, like again, I think like both the other cases, there was a lot of, there had been already a hearing. And we think that that bright line does apply in this case and makes those cases not distinguishable. They actually are distinguishable, I'm sorry. And therefore, they're not inconsistent in any way. I would like to go back to Judge Hankinson's question about when it would be unreasonable for the General Counsel to withdraw the complaint. I'd like to understand exactly what the Board's position is. Is it actually at the notice of show cause? Is it on the presentation of evidence at the hearing? Or is it before the decision of the Board? Or some fourth thing that perhaps I'm not thinking of. When does the General Counsel lose the ability to withdraw a complaint? What we can look to for what the Board's position is for guidance is, I think, the American Elgin case. And in that case, relying on UFCW, I believe the holding of the Board was that it is too far gone, I guess, or it's adjudicatory, and thus the Board would have to approve of it. At the time there has been, the hearing has opened and there has been a, I can't define it exactly for you, but enough evidence has gone in that it's transferred from, this is a prosecutor prosecuting the case to, hold on, there's enough stuff going on here that our decision maker is actually now assessing something. For example, the credibility maybe of a witness or some sort of piece of evidence. It's that it's gotten far enough in the case that the prosecutor no longer has the ability to withdraw. And I know it's not a necessarily satisfying answer, but I do know that in this case that certainly had not happened. And why? If the state of the record is that UNFI, they present a summary judgment motion and they say, here's all of our arguments as to why summary judgment should be granted in our favor, and the General Counsel looks at it and is like, yikes, better drop this, then it's an assessment of the evidence and adjudicatory under the standard you just articulated. I believe it would be had the case been, again, transferred and in front of the Board so that the Board could issue the notice to show cause and transfer it to it. And I do believe that that's important. Because correctly so, and it happens, that the case does get far in adjudication and the General Counsel realizes, believe it or not, hey, maybe we need to withdraw the case. And that is simply, then the permission is asked of the Board, or if it's in front of the Administrative Law Judge at the time of the Administrative Law Judge, because it has gotten too far. And that can happen. But here, when just filing a motion for summary judgment with the Board does not mean that a party, you know, again, the General Counsel is in charge of the case, the litigation, the theory of the case. A party cannot just make the case adjudicatory as the Sears case held many, many years ago. You can't get past the General Counsel believing that there is a complaint to be issued. A private party doesn't get to do that. And in this case, the General Counsel withdrew the complaint before the hearing and before the relevance of summary judgment in terms of a hearing would happen, which is when the issues, and that hearing machinery would normally be stopped, and it would be in the Board's bailiwick to adjudicate it. When the Acting General Counsel withdrew the complaint, what was the stated basis for withdrawing the complaint? The, I believe, it's in the record in the, one of the, the appeal, because, you know, the way that the Board, you know, handles these things in a split sort of way is that the General Counsel, as, as what happened here, there was an appeal taken from the Regional Director's withdrawal that Mr. Miskimar took on behalf of UNFI to the, to the General Counsel. And there's a, it's an appeal because this is the General Counsel's decision. And I believe that letter saying why the General Counsel withdrew the complaint is simply that after review of the evidence, review of the record, the General Counsel has decided not to prosecute. But there's two different issues embedded in your answer. One is that normally when an agency changes its mind, we require a very stated and express understanding of why the agency is changing its mind, right? That is, that's part and parcel of administrative review. So one question is whether and to what extent the General Counsel's explanation is, satisfies that normal standard. And then the other one is that to the extent that the General Counsel doesn't actually offer an explanation, I'm sorry, offers an explanation that goes to the merits of the evidence, then under the standard that you gave to me and to Judge Higginson about that you know it when you see it, deprivation of prosecutorial discretion slash transferring over into the adjudicatory line, it sounds like the prosecutor, I'm sorry, the General Counsel is making a determination on the merits that we don't think our case is strong enough and hence it's adjudicatory. Sorry for the two-part question, but I'm happy to go back over it if it's. No problem. In fact, I'll go to the first question. I would say that absolutely the standard for agency decision-making and adjudication is an agency to do its decision-making. But again, it's sort of the threshold question here. This wasn't agency adjudication. It was under UFCW. It was the General Counsel's prosecutorial discretion. The Supreme Court has clearly held it's something that does not get review, does not get judicial review. So I would say that to your first question, but I would also say, if you can remind me what your second question was. Why don't we just do them in order, if the panel will indulge me. 10F gives jurisdiction for petitions to review of final agency actions and final decisions of the board. Yes. They petition for review of a decision by the board. So there's nothing else for the board to do other than to dismiss and say we have no jurisdiction over this case, right? Okay. What else, you tell me, what else could the board have done? Sure. I would respectfully disagree with that. I would say that 10F gives them jurisdiction over a final order of the board. And although this was a order of the board, it wasn't final, because the final action that the agency took was when UNFI took the appeal, which is the process by which we have in the statute and in the regulations, when a party wants to challenge the GC's determination to withdraw, they go to the process. We have an Office of Appeals. We have attorneys there. That is when, in June 2022, that was the end of the case. Not when the board said we're not stepping in to reverse the General Counsel's decision. That was not the end of the case. This order, May 11th, wasn't the end of the case. The end of the case was actually when the General Counsel decided it is not, he was not going to, he was not going to honor the appeal under the regulation to his office. So that's, that's, I don't know if that answers your question. It does, and we could go on for this for a while, but let's skip that and just go to more, let's just assume we disagree with you.  And that 10F gives us jurisdiction over final decisions of the board. Sure. Okay. This is the final decision of the board. Then we get to the question of why the General Counsel withdrew the complaint. There is a stated basis in the record. Assume we can review it. Why wouldn't we say it looks like the General Counsel adjudicated the merits of the case and therefore it's an adjudication and therefore the board had jurisdiction over it? Okay. Because what I would say is that the, it's a huge assumption that you're making in your first question. Assume you can review the General Counsel's decision to withdraw the case in the stated reasons. And I would say that assumption isn't one that this Court can make. I would say because of the UFCW case. We can if it's adjudicatory. If it, yes. And my question to you is why is it not adjudicatory when the General Counsel tells us, I looked at the evidence and I don't think it's good enough? Well, because it needs to be, for a final order, it needs to be adjudication, adjudicative order of the board, not of the General Counsel. Okay, so it just circles back on itself. It, it, it needs to be a final order of the, of the board and not of the General Counsel in order to get review by this Court or to have had the board's review below. Thank you, Counsel. Thank you. You saved, well, no, you haven't saved time, but you finished early and we appreciate it. Thank you very much. Rebuttal argument? Your Honors, I'll just mention a few things. One, Judge Oldham, to your point, what was going on here was an adjudication by the board upon receipt of UNFI's summary judgment motion. And while that was pending, although the union was attempting to get the new Acting General Counsel to withdraw the complaint, order the complaint's withdrawal, the union and the board were, in fact, engaging in a parallel summary judgment adjudication. And if you look at the briefs that are part of the record, you can see that the company pointed out to the board that to try to convince the Acting General Counsel to withdraw the complaint, the union submitted to the Acting General Counsel the party's summary judgment briefs from the parallel federal court case. So I, I believe that your point is well taken, that you have an agency that's changing its mind, but it's being done in a way where there's no transparency. But the question is, where's the board in this? It's the board that's going to rule or not rule. And the question that, and here the board said, dismissed the case. I understand a practical rule that would, or rather the board would properly protect its own jurisdiction and its own processes and not allow people to manipulate the system to go forward and have them engage and go forward and going forward and then come in. But here the board has acted. It, it said, dismissed. Well, in fact, Judge Higginbotham, I would suggest the board actually was prevented from acting. We had a pending summary judgment motion that UNFI filed with the board. And the complaint's withdrawal actually prevented the board. How so? If, if, how, how, what prevented them from doing that? If, if, in a sense that, in one sense, what you're arguing, I'm suggesting to you that in the, we have to look at these and turn it, this jurisdictional quote, jurisdictional thing in pragmatic terms, not in the, the stricter jurist concepts of jurisdiction of the court. And in looking at some of that practical, pragmatic assessment, the, the board sits there and they do not want to be manipulated to engage their resources to go forward, et cetera, et cetera. And they're fully protected to doing that. And they, they got a motion in to, to get rid of the case and they, they dismissed it. And now the question, our question is, is that prosecutorial discretion or not? And when did they lose their prosecutorial discretion? Say, well, they filed the motion. Well. Yeah, and I think, Your Honor, Judge, you can go first. Unluckily, we're stepping over the board here. You're telling the board, you can't do that. You're correct that this issue went before the board. But what the board did was it misapplied, we believe, the dividing line between the general counsel's prosecutorial discretion and what constituted the commencement of adjudication using adjudication the way it was defined and established by the Supreme Court in the UFCW case. And that's the why, the reason we're before the court right now. The, the board addressed this issue, but it's our position that the board addressed this issue in a way that's inconsistent with the board's own rules governing the adjudication of summary judgment motions. And it also, the actions in this case prevented the board from addressing the merits in what we think would have been an appropriate way. So this is a, you're, you're viewing then a decision of, of the board's own rules itself and their application to it. And what level of deference should we give to that? We think that's addressed in the UFCW case. Whatever is addressed. What, my question to you is what deference do we, you're giving it no deference. Well, I think the board is entitled to reasonable deference, but they have gone beyond the line of reasonableness, we believe, consistent with the standards that are articulated in the UFCW case. And I see that my time is up. Thank you both. Thank you very much. The case is submitted. And we will hear the second case in a minute.